GARRETT E. and ADELINE C. MOSURE, JR., Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mosure v. Commissioner
Docket No. 9786-79.
United States Tax Court
T.C. Memo 1981-564; 1981 Tax Ct. Memo LEXIS 166; 42 T.C.M. (CCH) 1279; T.C.M. (RIA) 81564; September 30, 1981. Garrett E. Mosure, Jr. and Adeline C. Mosure, pro se. James M. Kamman, for the respondent. PARKER MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined a deficiency of $ 1,100 in petitioners' 1976 Federal income tax. After concessions the sole issue for decision is whether expenses deducted by petitioner with respect to his employment were incurred while he was "away from home" within the meaning of section 162(a)(2). [1]
*167 FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners, husband and wife, resided in Irvine, California, when they filed their petition in this case. They filed a timely joint Federal income tax return for 1976 with the Internal Revenue Service Center, Fresno, California. Adeline C. Mosure is a petitioner solely because she filed this joint tax return with her husband. Petitioner Garrett E. Mosure, Jr. (hereinafter petitioner) was graduated from Purdue University in January 1951, with a degree in mechanical engineering. From that date until June 1969, petitioner was continuously employed in the aerospace industry. In June 1969, petitioner was permanently laid off by Marquardt Corporation because of the adverse economic conditions within the aerospace industry. Petitioner had worked for Marquardt from December 5, 1961 until June 24, 1969. During this time, petitioner lived in Los Angeles and commuted to his job at Marquardt which was located in Van Nuys, California, approximately 15 miles northwest of Los Angeles. Petitioner was unable to secure employment *168 as an aerospace or aeronactical engineer so in 1969 he moved his family from the Los Angeles area to Escondido, California. Escondido is approximately 120 miles southeast of Los Angeles. In August 1969 petitioner and his wife opened a retail fabric store in Escondido and operated it as a sole proprietorship until it was sold in September 1975. Petitioner continued to seek employment in the aerospace industry after relocating to Escondido. During the early 1970's petitioner completed three "retreading courses" sponsored by the Department of Labor. The purpose of these courses was to ease the economic hardship of the aerospace recession by providing aerospace engineers with sufficient additional skills to secure employment in other engineering fields. In 1974 petitioner was enrolled at California State University, Long Beach, in his third retreading course. It was at this time and through this course that petitioner secured employment with Fluor Corporation as a cost engineer. Fluor Corporation is one of the largest heavy construction engineering firms in the United States. At the time of petitioner's hiring in June 1974, Fluor's permanent corporate headquarters was located *169 at 25000 South Atlantic Blvd., Los Angeles, California. Fluor also had office space in nine facilities in Los Angeles and Orange County. All of the Fluor facilities were within a radius of five miles except for the Anaheim facility which was approximately 45 miles southeast of Los Angeles and 75 miles northwest of Escondido. As early as 1970, Fluor was investigating the possibility of moving to a single location somewhere in southern California. In January 1971 Fluor planned to acquire a building located in Laguna Niguel, California. The facility had more than one million square feet of floor space, and was located 44 miles south of Fluor's Los Angeles headquarters. This plan was abandoned in April 1971. In November 1972, Fluor obtained a four-year option to acquire a large tract of land in the Irvine Industrial Complex. Irvine is approximately 60 miles southeast of Los Angeles and 60 miles north of Escondido. In April 1974, Fluor announced that a construction firm had been hired to manage the building of the new facilities in Irvine. The facility was announced to be slated for occupancy in December 1976. In July 1974, Fluor exercised its option to acquire the Irvine land. *170 By the fall of 1976 the complex was sufficiently completed so that Fluor started relocating various functions there. In June 1974 when petitioner was hired as a cost engineer, cost engineering for Fluor was a home office activity involving forecasting and monitoring of costs on large construction projects. Fluor did not have any type of employment other than permanent. At the time of his hiring, petitioner was not told the specific project to which he would be assigned. He also did not know whether or not Fluor would move to a new location. Since the construction contractor had been selected and there were rumors that Fluor was going to move, "everybody was 99 percent sure" that the location would be moved from downtown Los Angeles to Irvine. Petitioner "had no written guarantee" that Fluor would move to Irvine, but shortly after he was hired, there was no doubt that the move would ultimately be made. Petitioner was first assigned to work at a plant approximately three miles from Fluor's corporate offices. During the summer of 1975 petitioner began working at the headquarters building on Atlantic Blvd. Periodically petitioner was assigned to brief projects at other facilities *171 in the Los Angeles area and in Anaheim. From the time petitioner relocated to Escondido in 1969 until approximately 1977-1978, petitioner continued to seek employment in the aerospace industry.During the period from June 1974, when he went to work for Fluor, until December 1976, petitioner acquired lodging in Los Angeles during the week and returned to Escondido on weekends. In July 1976 petitioner and his wife purchased a home in Irvine, and in November 1976 petitioner's work group moved into Fluor's new Irvine facility. In mid December 1976 petitioner and his wife moved into their new home in Irvine.
On the 1976 Federal income tax return, petitioner deducted as employee business expenses his expenditures for lodging and meals in the Los Angeles area and the expense of his weekend trips between Los Angeles and Escondido. The deductions totalled $ 4,438 as follows: Lodging
$ 1,264.00
Meals [2]
$ 9 X 158 days
$ 1,422.00
$ 4 X 43 days
172.00
1,594.00
Mileage 43 trips X 245 X $ .15
1,580.00
Total:
$ 4,438.00
*172 In his notice of deficiency, respondent disallowed this deduction. OPINION The sole issue for decision is whether expenses deducted by petitioner for mileage, meals, and lodging were incurred while he was "away from home" within the meaning of section 162(a)(2). Generally section 262 disallows any deduction for personal, living or family expenses. Section 162(a)(2), however, allows a taxpayer to deduct expenses for meals, lodging, and transportation incurred while away from home in the pursuit of a trade or business. The travel expenses are deductible only if the expenses are: (1) reasonable and necessary; (2) incurred while "away from home"; and (3) incurred in the pursuit of a trade or business. , rehearing denied . The word "home," as used in section 162(a)(2), means the general vicinity of the taxpayer's principal place of business or employment rather than the location of his personal residence, if the two are not the same. ; ; . *173 There is an exception to this general rule, however, where a taxpayer accepts an assignment for temporary as opposed to indefinite or permanent employment away from his residence and usual place of employment. In that event the site of his temporary employment is not the taxpayer's home for purposes of section 162(a)(2), and he may deduct certain expenses incurred with respect to his temporary place of employment that would otherwise be nondeductible personal expenses. , rehearing denied, ; . The Court of Appeals for the Ninth Circuit, to which an appeal from this case would lie, has set forth its own approach for determining whether a taxpayer who accepts employment away from his "tax home" is entitled to deduct travel expenses. In , [3] the Court of Appeals stated (at 495) that: *174 An employee might be said to change his tax home if there is a reasonable probability known to him that he may be employed for a long period of time at his new station. What constitutes "a long period of time" varies with circumstances surrounding each case. If such be the case, it is reasonable to expect him to move his permanent abode to his new station, and thus avoid the double burden that the Congress intended to mitigate. (Emphasis in the original.) Petitioner argues that his home for tax purposes is in Escondido because that is the location of his actual residence. This argument has no merit. It is well established that for purposes of section 162(a)(2) "home" means the vicinity of the taxpayer's principal place of employment and not the location of his residence. , , ; and Alternatively, petitioner argues that his employment with Fluor was temporary. From the time he moved to Escondido in 1969 through 1977 or 1978, he continued to look for a job in the *175 aerospace industry. Petitioner thus considered his position with Fluor to be a temporary type of employment. We have held that if employment which was temporary in contemplation at the date of its commencement becomes indeterminate in duration "the situs of such employment for purposes of the statute becomes the taxpayer's home." .Employment may change from temporary to indefinite "due to changed circumstances or simply by the passage of time." . In this case petitioner's employment was of a permanent nature.Fluor did not have any type of employment other than permanent. Furthermore petitioner's employment lasted from June 1974 through December 1976 and up to the present time. Petitioner also argues that his employment in Los Angeles was temporary. He so argues because at the time of his employment with Fluor there was an established date for the move to Irvine which was only 60 miles north of Escondido. The record shows that at the time petitioner began his employment he anticipated that Fluor would move to Irvine. This was not, however, an absolute *176 certainty. Fluor did not actually exercise its option to acquire the Irvine land until after petitioner had begun his employment. Furthermore, the Irvine facility was not even slated for opening until the fall of 1976, two years after petitioner began his employment. Applying either the Ninth Circuit "long period of time" test in Harvey or the temporary-indefinite test of this Court, [4] we reach the same result. We hold that under these circumstances two years is "a long period of time" within the Harvey test and that his employment in Los Angeles was not temporary. We hold that the expenses in question arose not from business needs but from personal considerations and are not deductible. Decision will be entered for respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year here involved.↩
2. Meals average $ 9 per day for full days spent in Los Angeles, and $ 4 per day on Friday since the return to Escondido was on that day and the evening meal was taken at petitioner's home in Escondido.↩
3. See ; ; .↩
4. A place of business is a "temporary" place of business if the employment is such that termination within a short period could be foreseen. See, for example, .↩